UNITED STATES DISTRICT COURT                                    NOT FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

HUGO GALVIZ-ZAPATA,                                             FINDINGS OF FACT
                                                                 00 CV 6736 (JG)
                    Petitioner,

            v.

UNITED STATES OF AMERICA,

                    Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


A P P E A R A N C E S:

        NORMAN TRABULUS
                666 Old Country Road
                Suite 704
                Garden City, New York  11530
                Attorney for Petitioner

        ROSLYNN R. MAUSKOPF
                United States Attorney
                Eastern District of New York
                147 Pierrepont Street
                Brooklyn, New York 11201
        By:     John R. Kroger
                Assistant U.S. Attorney
                Attorneys for Respondent

JOHN GLEESON, United States District Judge:

            Familiarity with all prior proceedings, including the Second Circuit's opinion

dated December 6, 2005, *Galviz Zapata v. United States*, 431 F.3d 395 (2005), is assumed.

Based on the original evidentiary hearing on March 9, 2001 and a supplemental evidentiary

hearing on February 9, 2006, I make the following findings of fact in compliance with the

Second Circuit's directions.

1.      The defendant[1] was charged with narcotics trafficking in an information. The penalty provision cited in the caption and in the text of the information subjected him to a mandatory minimum sentence of ten years and a maximum sentence of life in prison.  A.141-42.[2]

2.      The defendant agreed to plead guilty.  In return, the government agreed to recommend a base offense level of 32, two levels lower than the facts warranted.  *See* A. 78; *see also* A. 83-85.

3.      The government further agreed not to recommend an upward adjustment for an aggravating role in the offense, which the facts arguably warranted.  *See* A. 78; *see also* A. 100 (despite plea agreement, probation officer who prepared presentence report recommended three-level upward adjustment for role in the offense).

4.      This latter agreement was important, not only because the role adjustment would have elevated the defendant's guidelines range, but also because it would have rendered him ineligible for "safety value" relief from the mandatory minimum.  *See* U.S.S.G. §§ 2D1.1(b)(7) and 5C1.3(a)(4).

5.      The defendant pled guilty on July 7, 1999.  He was expressly informed that he faced a 10-year mandatory minimum in the absence of an exception.  A. 69.  Because the defendant was not contemplating cooperation with the government, the exception available to him was the possibility of "safety valve" relief from the mandatory minimum.  *See* U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f).

6.      Safety valve relief is available only if five prerequisites are satisfied.  One

---

[1]      Petitioner Hugo Galviz-Zapata is referred to herein as "the defendant."

[2]      Citations in the form "A. __" are to the defendant's Brief and Joint Appendix in the pending appeal, No. 01-2575.  "Tr. __" refers to the transcript of the supplemental hearing on February 9, 2006.

is a truthful statement by the defendant to the government providing all information and evidence concerning the defendant's offense of conviction and other relevant conduct. *See* U.S.S.G. § 5C1.2(a)(5).

7.      In this case, at the time the defendant pled guilty, he intended to make such a statement. *See* A.98 (it was not a foregone conclusion at time of plea that the defendant would face a mandatory minimum). However, he later decided that he did not wish to make a full disclosure of the facts surrounding his offense and other relevant conduct. A. 101; A. 114.[3] Thus, he chose to remain subject to the 10-year mandatory minimum.

8.      When the defendant appeared for sentencing, he expected that his guidelines range would be 108-135 months. A. 84. He also expected to be sentenced to the mandatory minimum of 120 months, as he chose not to seek relief from that requirement. A. 85-86.

9.      At sentencing, the defendant's counsel, upon my inquiry, stated that there was an "academic" dispute regarding the offense level. Specifically, the question was whether the defendant should be held accountable for 1-3 kilograms of heroin or 3-10 kilograms. Either quantity subjected him to the mandatory minimum sentence of ten years. Though counsel was correct that the issue was academic, I nevertheless addressed the dispute and resolved it in the defendant's favor. Specifically, although the facts warranted a base offense level of 34, I permitted the parties to reduce that by agreement to level 32. A. 85. As a result, I lowered the guidelines range to 87-108 months. I then sentenced the defendant to 120 months. A. 87.

---

[3]      The presentence report states (at ¶ 10) that the defendant refused to make the required safety valve proffer due to "fear of reprisals by" members of the conspiracy in Colombia.

10.     Both the defendant and his lawyer, Lisa Scolari, were upset about the 10-year sentence.  That I had lowered the guidelines range from 108-135 months (which embraced the mandatory minimum term) to 87-108 months moments before sentence was imposed no doubt exacerbated the disappointment.

11.     Immediately after the sentence, Scolari conferred with the defendant in the holding pen adjacent to the courtroom.  Each realized that the defendant's decision not to seek safety valve relief had likely cost him 33 months in jail, *i.e.*, the difference between the mandatory minimum and the bottom of the applicable range as revised a few moments earlier.

12.     The defendant and Scolari discussed whether anything could be done about the 10-year sentence.  Scolari advised the defendant (reasonably, in my view) that he had no chance for a successful appeal.

13.     Scolari, who was not an unbiased witness,[4] testified that she did not believe she consulted with the defendant about an appeal.  Tr. 13.  However, she explained that testimony as follows:

> When I think of consulted, I think of me raising the issue with a client and so in this particular case, when I say I don't believe I consulted, that's what I meant to say.  I don't believe I brought it up to him.

Tr. 14.  In other words, Scolari did not "consult" with the defendant about an appeal *in that she did not raise the issue of an appeal*.  *Id*. at 14-15.  She was upset at the sentence because she "felt there were some choices that had been made," *i.e.*, the defendant's choice not to make a safety

---

[4]     As she testified at the initial hearing, Scolari is "uncomfortable having to say or do anything that might be contrary to" the defendant's position.  A. 108.  Though her dedication to her former client is admirable, it shaded Scolari's testimony in his favor.

valve proffer, "and that it was unfortunate that he had ended up being sentenced to the full ten years." Tr. 15.

14.     I have little doubt (and find) that the defendant and Scolari discussed in the holding pen immediately after sentence was imposed whether anything could be done about the ten-year sentence.  Because (1) the defendant had pled guilty to a charge carrying the 10-year mandatory minimum; (2) there was no dispute that the drug quantity involved triggered the mandatory minimum; and (3) the defendant elected not to make the disclosure he was required to make to become eligible for relief from the mandatory minimum, Scolari advised the defendant there was nothing to be done.  Accordingly, Scolari did not suggest an appeal, and the defendant did not instruct Scolari to appeal.  They had no further contact during the ten-day period provided for the filing of a notice of appeal.

15.     Scolari did not "abandon" the defendant or fail to discuss with him the prospect of further proceedings.  Rather, she sensibly did not recommend appellate review during her conference with the defendant immediately after sentence was imposed.

So Ordered.


John Gleeson, U.S.D.J.



Dated: February 14, 2006
        Brooklyn, New York